WARNER, C.J.
The appellant challenges the trial court’s upward departure from the. sentencing guidelines for his conviction of manslaughter based upon the court’s conclusion that the defendant had created a great risk of death or serious injury to many persons by firing into a crowd in a drive-by shooting. He claims that because he fired only one shot, he could not have placed anyone but the victim in danger. We hold that firing one shot into a crowd during a drive-by shooting, under the facts of this case, was sufficient to support an upward departure pursuant' to section 921.0016(3)©, Florida Statutes (1997).
On the date of the incident, appellant was riding in his car through a park with some friends. As they approached some people in the park, a person in red shorts harassed one of appellant’s cohorts[1]. Appellant and his fiancée then left the park to retrieve some guns. Upon returning to the park, appellant switched to the passenger side of the car. As they drove up to a stop sign, the driver accelerated, appellant stuck his hand out of the window with the gun, and pulled the trigger. Appellant *619 claimed he didn’t intend to shoot. In his taped confession appellant said he was initially pointing the gun at the sky and then brought the gun down. In response to the detective’s questions, the following exchange occurred:
Detective O’Neil: And then you brought the gun down; is that right?
Mr. Rahyns: Yes.
Detective O’Neil: Like it was pointing at a crowd?
Mr. Rahyns: Not intending pointing at the crowd like that, but I brought the gun down.
Two witnesses to the crime testified somewhat differently. Freddie Collins testified that he, the victim, and another friend, Antoine Cunningham, were standing by the roadway with another ten people standing about fifteen feet away. When the vehicle approached, he observed both the front passenger and rear passenger lean out of the vehicle, draw their guns, and shoot at the crowd. At the time the victim was standing only five feet away from the vehicle. Collins and Cunningham stood close by. Cunningham saw only appellant fire a weapon.[2]
Appellant was convicted of manslaughter. The trial court concluded that because appellant’s action in firing the shot into a crowd created a great risk to many persons, an upward departure was warranted. The judge then sentenced appellant to thirty years in prison.
When a trial court imposes a departure sentence, the facts supporting that departure must be proven by a preponder-anee of the evidence. See Green v. State, 662 So.2d 748, 749-50 (Fla. 4th DCA 1995); see also § 921.001(6), Fla. Stat. (1995). Absent an abuse of discretion, a departure sentence will not be reversed on appeal. See Brown v. State, 667 So.2d 901, 902 (Fla. 4th DCA 1996).
Section 921.0016(3)© permits a trial court to depart upward from the sentencing guidelines when “[t]he offense created a substantial risk of death or great bodily harm to many persons.... ” Appellant argues that because he fired only one shot, he could only have caused a great risk of death or serious injury to one person, which would be insufficient under the statute. In Webster v. State, 500 So.2d 285 (Fla. 1st DCA 1986), the defendant was standing ten to fifteen feet away from the victim when the defendant shot him, and about thirty to forty persons were in the near vicinity. One witness was standing three feet away from the victim. On these facts, the court affirmed the trial court’s upward departure based on flagrant disregard for the safety of others.[3] See id. at 288. The facts of the instant case are similar. The appellant knew that there was a “crowd” of approximately ten to thirteen people in whose direction he shot. He also knew that three people were standing extremely close to his vehicle when he pulled the trigger. Thus, many people were exposed to the risk of harm, even though only one was actually harmed.
In Hernandez v. State, 660 So.2d 1116, 1117 (Fla. 4th DCA 1995), we reversed an upward departure based on the flagrant disregard to the safety of others in a case *620 where the defendant shot four to six times into a vehicle containing only one occupant. While the state argued that one of the defendant’s shots could have ricocheted and injured another motorist, our court found that there was no evidence that anyone else other than the intended victim was placed in extraordinary risk by the defendant’s actions. We stated, however, that “[w]e distinguish this case from incidents, such as drive-by shootings, where the safety of others is directly placed in jeopardy as a result of the criminal offense.” Id. The instant case involves a drive-by shooting in which other persons were put at risk. Indeed, the evidence suggests that the man in the red shorts was the intended victim of the shooting. The victim was simply an innocent bystander. In addition, at least one other individual was standing in close proximity to the victim, with ten others within fifteen feet away.
Based on our review of the record, we affirm.
KLEIN and TAYLOR, JJ., concur.

. It is somewhat difficult for this court to understand completely the evidence presented at trial because the witnesses frequently referred to diagrams and pictures, none of which are part of this record, although they should be. When questioning witnesses, the prosecutor (or defense attorney) frequently asked the witnesses something such as ”[n]ow point out where you were standing,” to which the witnesses might respond, ”[r]ight here.” While we are sure that the jury understood the witnesses’ testimony, it is hard for the appellate court to get a complete understanding of the facts. It is incumbent upon all of the parties to the proceedings to provide the appellate court with an intelligible record. Nev-. ertheless, on this record we can piece together the facts to decide the issues in this case. We simply point out our difficulties with the hope and request that trial attorneys (as well as trial judges, when applicable) give enough verbal explanation of the demonstrative evidence so that the appellate court can adequately review the record.

. In its brief, the state argues that appellant may have fired two shots. While two shots may have been fired, both the testimony and ballistic evidence are undisputed that appellant fired only one shot. If another shot was fired, it was done so by the rear passenger.

. Prior to the enactment of section 921.0016, case law permitted an upward departure where the crime was committed with "flagrant disregard for the safety of others....” Scurry v. State, 489 So.2d 25, 29 (Fla.1986). The statutory language now uses "substantial risk of death or great bodily harm to many persons” as its standard. § 921.0016(3)6). However, cases decided since the statute’s enactment do not draw any distinction between the prior standard and the statutory standard and in fact cite to cases decided under “flagrant disregard” when discussing the "harm to many persons” standard. See, e.g., Bellamy v. State, 677 So.2d 390, 391 (Fla. 2d DCA 1996). We conclude that the two standards are similar, and prior case law may be relied on in analyzing the issue.